Honolulu, January 16th, 1884.

---

## EMMA KALELEONALANI & RUTH KEELIKOLANI *vs.* COMMISSIONERS OF CROWN LANDS.

### IN EQUITY.  BEFORE JUDD, C.J.

### JANUARY, 1884.

Plaintiffs, as the heirs of Kamehameha IV., held entitled to premises on Merchant street, Honolulu, known as Honolulu Hale, as against the Commissioners of Crown Lands: said premises being the private property of said King, and not Crown Lands, although in possession of the Commissioners under a claim of title.

A conveyance by Ruth Keelikolani of all her interest in Crown Lands, held not to include the land in question.

### DECISION OF JUDD, C.J.

1. The bill alleges in substance that His Majesty Kamehameha IV. died intestate, November 30th, 1863, leaving as his

sole heirs at law, his widow Queen Emma, and his father M. Kekuanaoa, who died intestate, leaving his son Kamehameha V., and his daughter, said Ruth Keelikolani, as his heirs, and that Kamehameha V. thereafter died intestate, leaving the plaintiff R. Keelikolani as his heir-at-law, and that by the statutes of this Kingdom the plaintiffs are entitled, share and share alike, to the private estate of Kamehameha IV.

2. That Kamehameha IV. was seized and possessed in his lifetime, in his private capacity, in fee simple of all that parcel of land situated on Merchant-street, in Honolulu (describing it), being Part 1 of the Award of the Land Commission No. 10,806 to Kamehameha III., which said premises were devised to Kamehameha IV. by will of Kamehameha III., duly admitted to probate.

3. That His Majesty Kamehameha IV., by a recorded deed, conveyed to William Webster, his confidential secretary, the land above described, to enable Mr. Webster to raise money upon mortgage for the use of His Majesty, and that the several mortgages which were thus made have long since been paid and discharged.

4. That on the 25th of October, 1866, the then Commissioners of Crown Lands procured Robert Moffitt, the executor of the will of William Webster, to execute an instrument declaring that said Webster held the premises above described, together with many other parcels of land, as trustee of Kamehameha IV. in order to raise money upon mortgage of the same, which had been paid, and conveying all the right, title and interest of the said Webster in the said premises to the Commissioners of Crown Lands.

That said Commissioners thereupon took possession of the premises and they and their successors have ever since received and collected the rents therefrom.

5. That many of the other lands mentioned in the last-mentioned deed were a portion of the Royal Domain, and the, said premises were included in the said instrument by mistake, and so far as the Commissioners have acquired any title to the

premises by virtue of the said instrument, it was as trustees for the heirs of Kamehameha IV.

That the Commissioners claim that the premises comprised portions of the Royal Domain or Crown Lands, and that the heirs of Kamehameha IV. have no title therein, but that the contrary is the truth.

6. That the plaintiffs are unacquainted with business and have to depend on agents for the management of their affairs, and that they have but recently been informed that said premises were part of the private estate of Kamehameha IV., but, on the contrary, have been often informed by the Commissioners of Crown Lands that the said premises comprised a portion of the Royal Domain, and that under the decision of the Supreme Court in the matter of the estate of Kamehameha IV. they were entitled to no portion thereof.

The bill prays that defendants may be decreed to hold the premises, as did William Webster in his lifetime, upon trust for the heirs of Kamehameha IV., and that defendants be ordered to convey all their right, title and interest in and to the said premises to the plaintiffs, and that they may be put in possession of the same and that defendants be ordered to account for the rents and profits, etc.

The answer of the respondents admits the allegations in the first paragraph, but denies the legal conclusion that the plaintiffs are entitled, share and share alike, to the private estate of Kamehameha IV.

As to the second paragraph, respondents deny that Kamehameha IV. died seized in his private capacity of the premises in the complaint described, but admit that he was seized of a part of the said land, describing the same by metes and bounds, and the plaintiffs thereupon disclaimed title in so much of the premises described in their complaint as was conveyed by Kamehameha IV. to the Minister of the Interior, and it was conceded that the portion disclaimed represents the difference between the land described in the complaint and that admitted in the answer.

The third paragraph of the bill is admitted, and also the fourth, except as to the extent of the premises.

The fifth and sixth paragraphs are neither admitted nor denied; and the respondents say that R. Keelikolani on the 30th September, 1880, by deed of that date for a valuable consideration paid her by Claus Spreckels, conveyed and quitclaimed to him all the lands therein mentioned, and a copy of the deed is annexed to the answer. That at the time of the execution and delivery of the deed, the land, the subject of this will, was commonly called, known and reputed to be a Crown Land, or was derived by said Keelikolani as heir to her father and brother aforesaid. That by deed dated August 11th, 1882, Claus Spreckels conveyed to the defendants as such commissioners all his estate in the said premises. And that the respondents claims to hold the premises against both the complainants by virtue of an Act of the Legislature of January 3d, 1865, entitled an Act to relieve the Royal Domain from encumbrance, and to render the same inalienable.

The complainant Keelikolani died on the 24th May, 1883, and C. R. Bishop and R. W. Meyer, executors of her will, make this suggestion on the 5th October, and ask that the suit be continued.

I will confine myself to a brief statement of the conclusions reached by me in this case.

I. The land in question, comprising the premises formerly known as "Honolulu Hale," used as the Government offices for many years, is not in the list of lands reserved by Kamehameha III. for himself and his successors, but was awarded to him by the Land Commission upon application and evidence taken.

II. It was, therefore, the private land of Kamehameha III., and was unaffected by the instrument of reservation of March 8, 1848, and the Act of 9th June, 1848, confirming the same, and came to Kamehameha IV. as private land.

III. On the death of Kamehameha IV., intestate, land of this character would descend not to the successor to the throne, but

to the heirs at law of the King, who are now represented by the plaintiffs.

IV. But Kamehameha IV. had, in his lifetime, conveyed this land to William Webster by deed dated 18th March, 1856, and Mr. Webster had raised money for His Majesty by a mortgage upon this land. The mortgage presented shows it was released, upon payment of the amount secured, by the administrators of the estate of Kamehameha IV.

V. On the 25th October, 1866, Mr. Webster being then deceased, the executor of his will, R. Moffitt, released the premises to the then Commissioners of Crown Lands. This was ineffectual to convey the legal title which W. Webster had, for this was in his devisee. But the title outstanding in another person is not in controversy here. The Commissioners of Crown Lands take nothing by the executor's release.

VI. So far then, the complainants are entitled to relief as against the Crown Commissioners who are in possession under claim of title. But there is urged in avoidance of Keelikolani's claim, her conveyance to Claus Spreckels, the interest conveyed being now held by respondents. Does this deed include the premises in controversy? By it Keelikolani conveys for a valuable consideration to Claus Spreckels all and singular the several lands reserved by His Majesty Kamehameha IV. to be his own private property, and mentioned and specified and declared by a certain Act passed on the 7th June, 1864, and commonly known as Crown Lands, together with all rights, easements and appurtenances to the said lands or any or either of them belonging, "and all my estate, right, title and interest both at law and in equity of, in and to the said lands, and of all other lands commonly called, known or reputed to be Crown Lands, or to be part parcel or member thereof, and whether belonging to me or to which I may be now entitled, either as heir to His said Majesty Kamehameha III., or to their late Majesties Kamehameha the IV., Kamehameha the V., my father, His Highness the late M. Kekuanaoa, or in any other manner or right whatsoever."

The language above used is broad enough to cover the land in question, for it was commonly called, known and reputed to be "Crown Land," and such lands Keelikolani conveys her rights in to Mr. Spreckels, whether entitled to them as heir of Kamehameha III., IV. or V., or of Kekuanaoa. The evidence is that all the lands which Kamehameha IV. had, whether in the reserved list of 1848, or lands which came to him in any other way, were treated by Webster as Crown Lands, and that the premises in dispute were taken possession of by Gov. Dominis as Crown Lands after the Act of 1864 passed, and it has ever since been leased and treated as such. Queen Emma herself says she did not know it was not Crown Land until recently so informed.

The general rule is clear as to construction of deeds, that the meaning and intention of the parties themselves should be ascertained if possible from the instrument and from the whole instrument. 2 Greenleaf's Cruise, pp. 295, 299.

An important rule of construction is that "Where the lands are first described generally, and afterwards a particular description is added, that shall restrain the general words." 2 Greenleaf's Cruise, p. 345.

It is immaterial whether the particular description follows or precedes the general words.

"Where there is a particular recital in a deed and general words of release are afterwards inserted, the generality of the words shall be qualified by the recital." 2 Greenleaf's Cruise, p. 304.

"General words shall be aptly restrained according to the subject matter or person to which they refer." Broom's Legal Maxims, p. 304.

Pothier says: "However general the terms may be in which an agreement is conceived, it only comprises those things respecting which it appears the contracting parties proposed to contract and not others which they never thought of." 1 Poth. Obl., p. 98.

The leading case is *Moore vs. Magrath,* Cowper, 9, decided by

Lord Mansfield in 1774. See also *Lyman vs. Clark*, 9 Mass., 235. *Willis vs. Ferris*, 5 Johnson, 335, 345. The question in every case is, what was intended to be conveyed?

But this land was not Crown Land in the sense that it descended to the successors of the throne, and it was not affected by this limitation. Did Keelikolani intend to convey anything but her supposed claim to the Crown Land? I think not. She was not bound by the mistake into which not only she but her co-complainant and many others had fallen, in supposing that the land in question was in the reserved list and entailed, as it were, to the Sovereigns of Hawaii. But it may be objected that she had no valid claim to the Crown Lands, for they passed to the heir and successor to the throne, which she was not, and not to the heir at law, and so the land in dispute and other lands under the same title, coming to her by descent through Kamehameha IV. and M. Kekuanaoa and Kamehameha V, were the only lands of which she had title to convey. The answer is obvious, her intention, as gathered from the deed as a whole, was to convey to Mr. Spreckels her interest and claim, whether valid or invalid, to the Crown Lands, and not to convey all property inherited by her from her father or her royal half-brother. To hold that this deed, by force of the language employed, includes a piece of land which came to Keelikolani by inheritance from Kekuanaoa, who inherited it from Kamehameha IV., who owned it as private estate, merely because it had been called and reputed to be "Crown Land," would compel me to hold that it includes land derived by Keelikolani from Kekuanaoa, which came to him by inheritance from Victoria Kamamalu, or from any other source, provided it had been known or called (whether erroneously or not is immaterial) "Crown Land."

As I have said, this land was not Crown Land, descendible to the next King, but the property of the King as Alexander Liholiho, and Keelikolani did not intend to convey any such land to Mr. Spreckels.

VII. But it is urged that the Act of 1865 to relieve the royal domain, etc., cast the duty upon the administrator of Kameha-

meha IV. to exhaust all the private lands of Kamehameha IV. before drawing the money appropriated by the Legislature for the payment of his debts, and as the administrator did not sell this land, supposing it to be Crown Land, the heirs of Kamehameha IV. are now estopped to claim the land, for if the administrator had done his duty he would have sold it.

But the grant of the Legislature was for the benefit of the reigning Sovereign, and I cannot see how the heirs of the private estate of the King are bound on any equitable doctrine to surrender it for a consideration which did not move to them from the respondents.

The equitable lien which the Government may have upon the land, by virtue of its grant to Kamehameha V. having relieved it of a mortgage, is another question—but the Government is not impleaded nor does it hold possession of the premises.

Upon a careful review of the whole case, I am of the opinion that the complainants are entitled to the relief prayed for.

*A. S. Hartwell, W. R. Castle & F. M. Hatch,* for plaintiffs.

*E. Preston,* for defendants.

Honolulu, January 19th, 1884.